The next matter, number 23-1854, Joseph Segrane v. Walter Duffy et al. At this time, would counsel for the appellant please introduce himself on the record to begin? May it please the Court, my name is Jared Goldstein. On behalf of the Roger Williams University Prisoner Rights Clinic, and I represent Appellant Joseph Segrane, I'd like to reserve three minutes for rebuttal. You may have three minutes. Thank you. Your Honor, this case raises a straightforward question. Could the evidence construed in favor of Mr. Segrane, as the summary judgment rule requires, reasonably support a jury finding of excessive force in violation of the Eighth Amendment? The answer to that question is yes. The defendants knocked Mr. Segrane to the ground and sprayed him with oleoresin capsicum, or OC, a form of pepper spray, at a time when Mr. Segrane was handcuffed, when he was accompanied by six corrections officers who were directing and controlling his movements. The defendants then put Mr. Segrane in a holding cell while he was still handcuffed and delayed decontamination and prolonged his pain. So there are three uses of force at issue, knocking Mr. Segrane down, spraying him with OC, and delaying decontamination. Taken together or separately, these uses of force were excessive under the Eighth Amendment, and the jury could so find. Counsel, can I direct you to look at the issues, defendant by defendant, for a moment? Yes. So first, your opposing counsel has said that your claims against Defendant Maliot, I'm sorry if I'm mispronouncing anybody's name, are waived for purposes of appeal, and I noticed that in your brief I don't think you even responded to the failure to intervene argument being waived. So are you really pursuing on appeal any arguments against that defendant? Yes, we are, Your Honor. Defendant Maliot, although he did not himself use force, was an integral participant in the uses of force. Your opposing counsel says you didn't sufficiently brief that below. I think it was limited to maybe a paragraph or two of discussion. So why isn't that waiver under our? Well, we described his participation in the uses of force, that is, he was there, he sat back while Mr. Segrane was in the holding cell. We described his participation, and then we asserted in the district court that that constituted integral participation under case law. We cited to case law, we cited both to his and to Defendant Glendening's integral participation. As we described what the legal theory was, we described the facts that were sufficient to support that claim. I don't know that we needed to elaborate it any more to raise the issue in the district court, and we reiterated the same claims in this appeal. So you think even though it was brief, it was sufficient to preserve that issue? I think it gave you enough information for you to judge whether the facts and the law could lead to a reasonable jury finding that Defendant Malayo was an integral participant in these uses of force and therefore was liable, because I think we described both factually what he did and then the legal support for the claim that that would be enough to make him liable. Do you agree, though, the failure to intervene argument is not before us? I didn't see that in your briefing. We did raise it in the district court. We did not mention that again in our brief to this court. So I agree that we've waived that and we're not relying on that theory as to Defendant Malayo. Let me just ask you one other question before I see if my colleagues have questions. On the Eighth Amendment claim on the leg sweep in particular, one of the arguments made by the opposing counsel here is that under the objective standard it has to be more than de minimis to qualify. Do you have any case really squarely holding that a leg sweep is more than de minimis harm, sufficient to qualify under the Eighth Amendment? I think some of the cases you talked about were throwing somebody to the ground, which does seem different to me. So just is there a case squarely on point about a leg sweep? The case that we cite, well, first, I agree with the standard that you mentioned, that de minimis is the standard for the objective element. That is, if the use of force is not by law de minimis, it would meet that standard. We cited to a case Griffin v. Hardrick at 604 F 949, Pennsite 954, which at least according to my parenthetical here says that the objective component was satisfied by the allegation of a leg sweep. There are other cases where defendants were thrown to the ground and that was held to be not de minimis. I mean, to be sure, the Supreme Court has said that on the one hand a push or shove is de minimis, and then on the other hand you have a series of cases where other types of use of force were found to be at least arguably not de minimis, enough to meet the test and get to a jury. Here we have defendant Glenn Denning used a leg sweep, which is knocking Mr. Segrang to the ground hard. He alleged that that caused him extreme pain. Now, it's true we don't allege that that specifically caused him long-lasting physical injury, although he says that the whole incident has caused him to measure. But that's not relevant to the objective standard, right? We don't look at the subjective experience of the person to decide whether objectively a leg sweep is more than de minimis. The question for the objective standard is whether the amount of force is sufficiently serious to give rise to an eighth amendment point. Regardless of the impact on the point. Although the court has said that whether it caused injury is relevant, that is it can show that it was serious, that it caused serious injury, though in this case the injury that he alleges is that he suffered significant pain and then long-term mental health consequences. So I think it's relevant. But what the court has said is that the amount of force in the injury are not the same. And then what matters is the amount is the amount of force. If I could turn to the allegation that Mr. Segrang was knocked to the ground and then sprayed with O.C., the defendant's sole contention all along has been that force was justified and that they acted in good faith because Mr. Segrang was holding a disposable razor and allegedly refused to drop it and that this created a sufficient threat. Perhaps we've lost Mr. Justice. Hold for one second. Can we confirm that's still here? Technological difficulty. Glad to hear that you're still here. So their claim is that they were acting in good faith because he was holding a disposable razor and allegedly refused to drop it and that created a sufficient threat to justify both knocking Mr. Segrang to the ground and then spraying him in the face with O.C. But that claim conflicts with a wealth of evidence and a jury could reasonably find that there was no threat that would justify the use of force here. Mr. Segrang was holding the razor because of the defendant's own bungling. He had been issued the razor by a corrections officer under Department of Corrections policies. A corrections officer is supposed to retrieve shower supplies before an inmate is returned to his cell. And here all of the defendants conceded in their depositions, but they didn't follow that policy. Instead, Defendant Glendening entered the flats, ordered Segrang to be handcuffed. Segrang presented his hands and wrists to be handcuffed, and he was handcuffed. And they never asked him to return the razor. They just handcuffed him and started walking with him. So he's only holding the razor because of their own mistake. That doesn't give rise to a threat to them or to anyone that he's innocently holding a razor that was issued to him consistently with DOC policies. Also, he's handcuffed behind his back. So he's holding a razor, his hands are handcuffed behind his back. There are six officers around him. One of the officers, Defendant Glendening, is holding Mr. Segrang by his upper right arm and directing his movements. So whatever threat he might have posed by holding the razor, even if the razor was dangerous, which we contend it's not, and we've submitted evidence that it's not, and even if he was trying to use it as a weapon, he's being controlled by the defendants and are surrounded by him at that point in his handcuffs. Furthermore, there's no evidence that Mr. Segrang made any verbal threats, that he was acting violently in any way, that he was doing anything to suggest that he was threatening. And finally, the razor itself is a prison-issued razor. It's a DCU razor that is a razor that they use in the disciplinary confinement unit that is selected specifically to prevent it from being used as a weapon. There seems some dispute between the parties in terms of what's in the record regarding that razor. There's no question that what's in the record, they now object that we didn't lay a foundation for what's in the record, but Defendants Glendening and Duffy each were shown a picture of a razor from the Orabrite Company. They said, yep, that's the razor that's used in the DCU, and Warden D'Souza Rosa said, we select special razors for use in maximum security, and so we then submitted the website from the Orabrite Company, whose razor Duffy and Glendening had conceded was the razor that's at issue, and what Orabrite says is that these razors are specifically designed for the prison context to make them safe. But counsel, are you arguing that if a prisoner has this razor elsewhere on the premises, not in the shower area, are you arguing that just we should take it as a matter of law, that that's just not posing, that it would be unreasonable for somebody working in the prison to think it was a threat that the prisoner had a razor? Oh, absolutely not. DOC may have legitimate safety concerns to limit possession of razors to the shower area, but that doesn't mean that in every context, for instance, in this context, where Mr. Segrane is holding a razor that he's, because defendants forgot to ask for it back, when he's handcuffed, surrounded by security. But why does it matter to them why he's holding the razor? The fact of the matter is he's holding the razor, and they need to make a decision very quickly about whether there's a threat. So I think the issue would be more, I would think, that he's handcuffed, but from their standpoint, they have a prisoner that's holding a razor, and nobody disputes he's holding the razor. For sure, but he's holding it because they forgot to ask for it back. That doesn't justify suddenly knocking him into the ground and spraying him with pepper spray. It might justify saying, oh, we need to get the razor back from you, but that's not what happened. They see the razor, and then they immediately use force. The moment he steps one foot outside of the shower area where he's allowed to hold the razor. But I think that's where the critical dispute between the parties is. So your opposing counsel says the testimony shows that he was asked to drop the razor, and he didn't, and that's why the leg sweep was utilized. And there's conflicting evidence on this, and that's why we have juries, and that's why this needs to go to a jury. That is, defendant Glenn Denning says, I told him to drop the razor. I gave him time to comply, although he also says I didn't need to give him any time to comply. But he says, I told him to drop the razor. He didn't drop the razor. I used the leg sweep. Segrin says, he didn't give me any time to comply. As soon as he noticed the razor, he threw me to the ground, and I tried to drop the razor immediately. So there's a dispute about whether they gave him any time to drop the razor before using force. Even if the leg sweep, though, even if there was, you know, this is the factual dispute about the leg sweep, but there's no dispute that he dropped the razor before defendant Duffy sprays him in the face with O.C. You can see the razor on the floor behind Segrin at 454 on the surveillance video. You have to zoom in. I missed it many times when I watched the video until I saw it on a bigger monitor. But you can see, and I submitted a photo of this with our opening brief, but you can see the razor on the floor at 454 on the surveillance video, and at 457 Duffy sprays Mr. Segrin in the face with O.C. So three seconds elapsed at a minimum when Segrin is not holding the razor and when Duffy sprays him in the face with O.C., and their whole justification for the use of O.C. is that they needed to do it because he was holding the razor. But that's unquestionably a dispute by the surveillance video. I know your time is up, but I'd like it if you could address the qualified immunity hurdle that I think you also face, and specifically sort of let's assume Eighth Amendment violations, specifically in the context of that second O.C. spray. What cases do you rely on, or what are your best cases to establish that the law was clearly established at the time of this incident? Yeah, give me just a second. I mean, their qualified immunity argument, though, is based on their version of the facts, that is that they used force in good faith, and there's no case that says that they can't use O.C. in good faith. I don't dispute that. If they were using it in good faith and there was a justification for a spray, there's no clearly established law that they couldn't. But the clearly established law is you can't, a corrections officer can't use O.C. when they have no valid justification, and here they didn't because Segrin had dropped the razor. It may be, you know, maybe Duffy can say I reasonably thought he still had the razor when I sprayed him, and therefore it was a mistake, but that hasn't been their theory. They've never made that argument, and that would then be a factual question. But if their whole theory has been he was still holding the razor when I sprayed him, that's what Duffy says, and that's their theory. So on qualified immunity, we have a set of cases in our reply brief. If I could find them, I would cite them again. I did read those. Yeah, sorry. So, I mean, but what the cases say is that, you know, a reasonable officer, you know, Again, this is Despain v. Uphoff from 2001. A reasonable officer would know that using O.C. spray without any misbehavior or threat from the inmate would violate the Eighth Amendment. We have a Perry case at 125 F. Sub 3rd. So using O.C. without justification is clearly, you know, was clearly established would violate the Eighth Amendment. And there is no justification here because he wasn't holding the razor. That is, there was no threat at the time when they used force. You know, at least three seconds, if not more, had gone from the time Mr. Segrin dropped the razor. Even if it was justified in the first place, there's a lot of dispute about whether there's any justification for force for holding the razor. But even if that would justify force, that threat had evaporated by the time he actually used O.C. Also, the testimony shows Duffy can't see Segrin's hands when he sprays him, so he doesn't even know whether he's got the razor or not. He's getting ready to spray without even checking whether it's still needed. There's no question that using force when you don't even know whether there's a threat and when there isn't, it was clearly established would violate the Eighth Amendment. Judge Lopez, do you have any questions? Yes, thank you. Counsel, I mean, Judge Smith relies heavily on the video in reaching conclusions as to whether there are genuine issues in material fact. I gather you would agree that that reliance on the video was appropriate. Is that correct? As a general proposition, you could rely on it. As a general proposition, where the video is clear, the court can rely on it. But where there are gaps in the videos, the court can't resolve the gaps or can only resolve the gaps in favor of the plaintiff. Or if the video is ambiguous, the video has to be interpreted in favor of the plaintiff. But absolutely, where the video is clear, the court is entitled to rely on it. I would suggest if one looks at that video, as apparently Judge Smith did, it seems unmistakable that Glendenny, before he uses the leg sweep, he makes an effort to take something out of your client's hand and shouts to colleagues, he's got a razor. And so the notion that he made no effort to obtain the razor before he employs the force of issue here seems to be, I would suggest, belied by the video itself, which is what Judge Smith alludes. There was an opportunity for your client to release the razor, but then he was trying to get it out of his hands. And then a number of seconds go by before he invokes the leg sweep. Are you suggesting that the video is ambiguous on that point? Yes, Your Honor. That is, what Glendenny testified to was he was trying to find out what was in Segrin's hand. He looks down, he sees Segrin is holding something in his hands. He never claimed, he did not testify that he tried to get the razor out of his hands and that Segrin clamped the razor and wouldn't. That is not his testimony. His testimony is he's trying to figure out what's in Segrin's hand. He sees he's holding a mirror. He knocks the mirror out of his hands. Then he is able to see that he has a razor. He announces he has a razor, and then he uses the leg sweep without telling him to drop the razor, without giving him a chance to drop the razor. That is, Glendenny testifies that he removed the mirror from Glendenny's hand, which is another one of the shower supplies they didn't collect. Judge Smith watches the video and says, no, no, what's happening at that moment is that Glendenny is trying to get the razor from his hands. But that's entirely ambiguous what's happening. All you can see is that Glendenny is fussing with Segrin's hands. But you can't see their hands. You can't see Glendenny's hands. You can't see Segrin's hands. You can't tell what is happening. You can just see Glendenny is focused on his hands. Why is he fussing with his hands? Because he sees that he has something in his hands, right? And so he's knocking the mirror out. But he's not saying drop the razor. Just Glendenny is looking down, and he's like messing with Segrin's hands. But we don't know that he's trying to remove the razor. Judge Smith, you know, infers that, but he infers that with, you know, he's filling a gap that is not apparent from what you can see in the video, and that's not consistent with what Glendenny testified to. It's not consistent with Segrin's own testimony. You keep referring to this innocent retention of the razor by your client. Your client knew fully well from prior experiences in the flats. He wasn't supposed to take any of those toiletries out of the flats. How can you characterize his retention of the razor as somehow innocent because they may not have reminded him on this occasion that he's not supposed to take a razor into the rest of the prison facility? How can you characterize that as innocent? So Mr. Segrin has learned from his time in prison to do what the corrections officers tell him to do, and he did exactly what the officers told him to do. They walked into the flats and they say, Segrin, present your wrists for handcuffing. He does exactly what they tell him to do. He doesn't say, oh, wait, I'm not supposed to, let me do something else. He does exactly what they tell him to do. They say, present your wrists for handcuffing. He presents his wrists for handcuffing. They say, start walking. He starts walking. We're taking back to your cell. He does exactly what the officers told him to do at all times, which was present your wrists for handcuffing. It's not his job to collect the razors. He knows that someone else usually says, let's take the razors back. That's not his job. It was the corrections officer's job. The susurrosa, the warden says, is the responsibility of the corrections officers to collect the shower supplies. Segrin did exactly what Glenn Denning and Duffy told him to do, and they told him to walk. So he starts walking. And then they see he's got a razor, and then, you know, that gives them a justification now for using force, and so they do. But it's not because he disobeyed any order. He did exactly what they told him to do. Okay. All right. Thank you. Thank you. Thank you, counsel. At this time, the counsel. May it please the court. Special Assistant Attorney General James R. Gwinn on behalf of the defendants at police. The district court correctly held that there were no genuine issues of material fact on the core issue of whether the corrections officers in this case applied force with a sufficiently culpable state of mind, that is, maliciously or wantonly and intentionally to inflict pain without any permissible reason, like a good faith effort to protect officer safety or to maintain prison order. Now, because Segrin failed to prove this essential element of wantonness and the intentional infliction of pain, the district court properly allowed summary judgment. And merely, as we've heard this morning, that Segrin presented an alternative version of facts surrounding the corrections officers' reasonable use of force does not preclude summary judgment. Could I focus you in on the second OC spray and specifically on the question of whether there is a material fact in dispute about that? When you take into consideration the video, which I think, at least when I watched it, it is hard to see, but it looks like the razor's dropped. Mr. Segrin's still cuffed from behind and the second OC spray happens. And then I read the testimony of the different officers and Mr. Segrin involving that. Why isn't that issue in dispute, at least enough to get to a jury? Thank you, Your Honor. That issue is not a genuine issue of material fact, because what is undisputed on the record is that the corrections officers had to react in real time. They didn't have the benefit of a pause button, as we do watching these videos. What they saw, and at that time, you heard Officer Glendening testify during his deposition that he repeatedly ordered Segrin to drop the razor. Before that, he also ordered him to open his fist so Officer Glendening could see what was in his fist. He then tries to pry open his fist to see what's there. He climpses the handle of the razor. All of the testimony was consistent that he then ordered him to drop it and that he shouted for the other officers to know that he had a razor. I accept what you say, and I think a lot of that goes to why this may not be a super strong case for a jury. But when officers do use force, including pepper spray against an inmate after he's been subdued, then can't a reasonable jury assume, based on the video and the testimony, that it looks like the O.C. spray happens after the inmate is subdued and the razor is dropped? Couldn't that be a question? Couldn't that be a question for the jury? I would argue no, Your Honor, because, first of all, you have to look. What matters is what was the intent of the officers. Were they acting in a good faith effort to maintain control and protect officer safety? And added to that, looking at it from the perspective of, we were just talking about Officer Glendening, but shifting to Officer Duffy, it's true Officer Duffy could not see Segrane's hands at the time he was applying pepper spray. But what he testified, what his state of mind was, was that if someone's saying drop the razor, drop the razor, that tells me that that person, meaning Segrane, still has possession of the razor. And Duffy testified, and he was quite clear on this, he testified that when he applied the second pepper spray first, he did it simultaneously with Glendening shouting, I've got it, I've got the razor. Now this happened, and this is what the district court found, happened simultaneously with the second pepper spray application. And none of that occurred. I mean, again, this is unfolding rapidly in a very tense situation where officer safety was at issue. And what you have is Duffy, who was the one who applied the pepper spray, hearing what the other officer is saying, he's got the razor, he hasn't dropped the razor, and then finally when the razor does drop, and it's within seconds, if not half a second, from the time that Duffy says, that Glendening says, I've got it, I've recovered the razor. And you can see this on video. Duffy reaching to pick the razor up and tossing it out of reach so that Segrane cannot regain it. Just to, very quickly, and I'm sorry, I don't know this, there's no sound on the video, right? There's no sound on the video. It is only an audio video. Yes. But what we do have is a visual video. No audio, yeah. We have the testimony. But exactly, a visual of the events. But what is important, and this goes back to the district court's resolution of the facts, as Judge Lopez noted, of course it's perfectly appropriate on summary judgment for a district court to rely on video evidence. Video evidence can also be used to rebut or refute clearly contradictory claims from, for instance, a plaintiff who is testifying that there was no threat or that I dropped the razor. On all of these points, it's depicted in the video when the razor fell, when Officer Glendening reached for it, and when he tossed it away, neutralizing the threat. All of that occurred simultaneously with, and this is what the district court found, with the application of pepper spray, the second application. Counsel, I think one of the arguments your opposing counsel is making, though, is that once Mr. Segrin was on the ground and he's handcuffed, there just is no, there's no threat any longer. So the second pepper spray is just, putting aside everything that you've just said, and we can all rewatch the video and see if we agree, but putting that aside, what is the reason for a second pepper spray against an individual that's on the ground handcuffed? Even in the circumstances of this case, he was handcuffed, he was on the ground. But when we go to the culpable state of mind, and there was no genuine dispute of material fact as to why, how Glendening perceived the threat and how Officer Duffy perceived the threat at the time. And let me just turn to what Glendening himself said. He said, I was standing directly behind Segrin's hand while he was handcuffed. My groin, my legs, my hand, everything was behind me. I remember that from your brief. I'm asking, though, about Officer Duffy and why, from his standpoint, he needs to, again, this is a question whether it goes to a jury, why couldn't the jury, just looking at the video, decide that there was not a threat once Mr. Segrin was on the ground and handcuffed that justified a second pepper spray? Because Duffy is listening to the events. Duffy is in the doorway to the room. The only people in the officer area where the struggle on the ground is taking place are Officers Glendening and Segrin. Duffy is coming through the door, has already been noticed, it's undisputed. Duffy could not see the hands. He was listening for the verbal cues. The first verbal cue he heard when he applied the first verse, as well as the second verse, was that he has the razor, he has the razor, and he's not dropping the razor. And that is because, replacing because of the proximity. I completely understand your argument. I'm trying to focus you on the fact that he's listening to the other officer. Yes, I understand. But why couldn't a jury decide whether it was reasonable to conclude that there was any further threat, regardless of what Officer Glendening was saying, once Mr. Segrin was on the ground, that justified a second pepper spray? Because the second pepper spray was applied simultaneously with him being on the ground, but the razor has not yet been recovered. The razor is recovered only when it drops to the ground and Glendening reaches for it and removes it. And Glendening also testified that the threat was not diminished by Segrin being handcuffed, because he was in such close proximity to him, two inches away, and he could still, even with the handcuffs, move his hands and open and close his fists, which allowed him to manipulate the razor. That is what the threat that was perceived by all the officers was. And that's why it was reasonable for them to apply force. And even if we credit that the seconds, that maybe it occurred half a second or a millisecond after the pepper spray burst, that the razor was dropped, or vice versa, that the razor was dropped a millisecond before the pepper spray, there's no way a reasonable officer would know under those circumstances, or there's no evidence in the record to show that either of the officers acted in any way that was maliciously or wantonly and purposely done for the sole purpose of inflicting harm, as opposed to what they reasonably perceived at the time as a legitimate and reasonable application of force to neutralize what appeared to them a serious threat to officer safety, as well as to restore order by Segrin's refusal to comply with the order to drop the razor. Let me just try again, because, again, I understand the argument that you're making. But whether something is reasonable, that's what I'm asking you. Why couldn't that go to the jury? And why couldn't a jury decide, looking at the video, that it is not reasonable to conclude that there's still a threat once the person is on the ground and handcuffed? So why just the specific question, why is that not a jury issue? Why are you saying that's a legal question? Because the element that needs to be proved for an excessive force plan is the malicious and wanton infliction of pain for no legitimate reason. So why couldn't a jury decide that based on the video, that it was malicious? No reasonable jury could conclude, given the split-second decisions that have to be made in this case, given the law that is established by the Supreme Court that officers are required to act under circumstances that are rapidly involving tense and uncertain, that they have that right to protect themselves and to apply reasonable force to neutralize a threat to officer safety, as well as to restore prison order. As a matter of law and fact, these circumstances just never rose to that level, which is why the district court correctly allowed summary judgment on the Eighth Amendment claim. And furthermore, with regard to qualified immunity, even though the district court didn't reach that point because it resulted on the constitutional issue, the evidence is also clear that there was no reason why these officers would not be entitled to protection under qualified immunity, even if they were mistaken in the split-second where they had to make these decisions about whether or not the second spray was necessary. Because even then, there is still no clearly established constitutional right for officers not to, for any clearly established constitutional right that would have alerted the officers to know that their application of pepper spray under the circumstances of this case was constitutionally prohibited. And with regard to the clearly established law that the plaintiff points to in his reply brief on page 28, he cites cases at a very, very high level that really stand for very uncontroversial propositions, including a District of Massachusetts case just saying that the Eighth Amendment protects inmates against uses of force unrelated to any sort of disciplinary or safety rationale. And another District of Massachusetts case where prison officials may not inflict unnecessary or wanton pain. And then third, he cites a Tenth Circuit case that using pepper spray without any misbehavior by an inmate is malicious or wanton. None of those cases would provide fair notice to any of the corrections officers involved in this case that they, by applying a leg sweep followed by pepper spray, to neutralize a threat to officer safety and to gain compliance with an order, were unreasonable. And that is clearly established by one point I would highlight is the Despain v. Upoff case and the Tenth Circuit case on which Segrin relies on page 28 of his reply. In that case, the facts were entirely different. You had a corrections officer who indiscriminately sprayed pepper spray in the lockup area, just walking around spraying it for no other reason than a practical joke. Now that is so far in contrast to the circumstances that these officers were confronted with. And I would again point you to their testimony, because it is their perception, at least on the wanton infliction of pain, that is relevant to both the Eighth Amendment violation as well as their ability to benefit from protection under qualified immunity. Because even if they were mistaken in their perception of the threat that Segrin posed, they all still remain entitled because their use of force under the circumstances that were presented was eminently reasonable. And as the Supreme Court has repeatedly recognized, starting with Graham, the calculus of reasonableness must allow for split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. And that is exactly the case that was presented here. So as I said before, the corrections officer had no pause button. Their actions and their use of force under the circumstances of this case have to be judged based on the circumstances they were confronting at the moment. And they had to have leeway to make judgment calls based on a rapidly evolving, intense circumstance. And there was absolutely no evidence presented, as the district court correctly found, to rebut that record evidence. And the district court, in reaching its conclusion, properly relied on, if I may just wrap up, properly relied on viewing the evidence through the lens of the video evidence and rejecting conclusory and self-serving assertions that were made by the plaintiff in his submission. Can I just ask you a quick question? Segrane argues in his reply that he hasn't waived his state law claims. I think because he argues you can essentially import the analysis from the federal Eighth Amendment claims to the state law claims, and I'm just wondering if you have a response to that. I do, and we continue to believe he has not. He has waived those claims. It is not true, and the record will bear me out on this, that the state law claims were all part and parcel or wrapped up on the same grounds as the Eighth Amendment claims. And I point you in particular to the district court's reasoning on the intentional infliction of emotional distress, the negligent infliction of emotional distress claims. Those had very separate elements under state law that had no bearing whatsoever on the Eighth Amendment discussion, and they were not addressed at all. And similarly, even on the state constitutional claim for an Eighth Amendment violation, the district court correctly noted that the Supreme Court of Rhode Island has not definitively said there's a direct cause of action for Eighth Amendment violations under its constitution, and that issue is not addressed anywhere. And even with regard to the two or so state law claims where some of the legal elements may have overlapped, it is incumbent on an appellant to point in the record to the specific facts or errors upon which they rely. Here it was, here's 40 pages of argument dealing with the Eighth Amendment. Go figure it out. And that is not an adequate argument for appeal. And while I'm on that point, I would note also on the failure to intervene. I understand that that has now been agreed as waived. But on the integral participant, it's the very same situation below. The words integral participation, those words were mentioned in passing in relation to Defendant Melio, but there was no argument. There was not even an attempt to incorporate an argument made with respect to the other defendants. So that argument, too, was not properly presented to the district court, and it's not properly before this court. Judge Lopez, do you have any questions? Well, with apologies, I do have a question. It's been a long morning. I bear considerable responsibility for that, and I do apologize. But I do have to ask one question. Thank you. There's been a lot of talk about the immediacy of the threat. And because of the immediacy of the threat, the need to act quickly, make split-second decisions. I'm a little puzzled by the notion that this safety razor, which is distributed, I guess, commonly to prisoners in flats, designed for use in correctional facilities. Why did that razor, under these circumstances, pose an immediate threat to the officers? I can understand how, if it gets into the prison population and an inmate has time to disassemble in some way and so expose what I gather would be a sharp razor, that could be a problem. But how could that safety razor pose an immediate threat to these officers on the scene? Judge Smith doesn't say much about that. It's a very thoughtful decision. He doesn't really say much about that, and I gather there was a fair amount of evidence that was subject to dispute about what kind of a threat these razors posed. Where does the immediacy come from, from the possession of the razor in his hands? An immediate threat to these officers. Thank you, Judge Lopez. I would point you specifically to Glenn Denning's testimony, because he is the one in close proximity to Seagram. He is the one who is two inches away from him. And the testimony in the record, it was the threat particularly to Officer Glenn Denning from the proximity of Seagram with a concealed object, which turned out to be a razor, in his clenched fist. That is what precipitated the leg sweep and then followed by the pepper spray burst. But in terms of the broader record, the record about these DCU-issued razors also was clearly presented to the district court and undisputed with any credible or with any admissible evidence. The DOC 30B-6 witness testified quite clearly that it's a razor. There's only a range of safety that goes with it. Razors are issued by DOC only for specific purposes, to use during showers in a designated area. Everyone knew, including Seagram, that those razors could not be removed from that area precisely because of the threat they posed. And that threat exists regardless of whether they're dissembled or in their same format as they were distributed. They all are required to be taken apart. They all are required to be returned and not removed from the area. Now, whether the officers bungled, as Seagram says, in not recovering that razor has nothing to do with their perception of the threat that Seagram's continued possession of that razor and refusal to drop the razor posed to the immediate safety of Officer Glendening, whose testimony was unrebutted, that he was two inches away and a razor could do serious damage. And that his whole goal, his whole thinking, was to put Seagram on the ground so he could recover, get control of Seagram's hands and recover the razor. And there was no evidence presented to rebut that. The Internet ad that has been discussed this morning was not evidence. It was not admissible evidence. And the state did not waive its objection to that evidence. The state noted in its opposition, actually it was in its reply to the summary judgment opposition filed by Seagram, that that was not reliable or sufficient evidence. They referred to it as simple marketing material, pull off the Internet. That was not admissible evidence. And none of it refuted in any event all of the testimony from the corrections experts who testified during their depositions about the very real and very legitimate and immediate threat that that razor posed to officer safety. Thank you. Thank you very much. At this time, if counsel for the appellant would please reintroduce himself on the record. He has a three-minute rebuttal. Jared Goldstein for Appellant Seagreen. I just have a few points to make. Counsel for the state says that there's no dispute over whether there was evidence of malice in this case. But the way that the Eighth Amendment law works is that you can infer malice when there's no justification for using force. That is, we don't need evidence that, you know, of what would direct evidence of what was in the hearts of these defendants. What we can show is that there was no justification for using force. That is, no reasonable officer could have thought that there was a serious threat to safety at the time. And I direct you to the Whitley factors. This is the factors that the Supreme Court has identified that courts should use for identifying when you can find evidence to infer malice. And the first one is the extent of the threat to the safety of staff and inmates. And here there simply is just no threat that would justify this use of force. Mr. Seagreen, as we've discussed, was handcuffed behind his back, surrounded by officers. He's holding a razor that DOC allows inmates to hold around each other, and he's only holding it because they didn't ask for it back. Now, counsel for the state says that the razor did pose an immediate threat, and he points to Officer Glenn Denning's testimony. No, Glenn Denning didn't testify specifically about this kind of razor. He certainly didn't testify that this kind of razor could be used as a weapon by someone who's handcuffed behind his back and whose all of his movements are being controlled by one of the officers. But in any event, his theory is the threat is because Seagreen could suddenly start swinging around and striking the razor at him. But there's no reason to think that that's going to happen. There's no – Seagreen isn't threatened to do that. He's not acting violently. He's just doing everything that Glenn Denning tells him to do. So Glenn Denning is saying, I'm using force because he could turn violent at any moment. But that's true with any inmate at any time. If that's enough justification to create an immediate threat, then corrections officers can use violence and use force whenever they want to. That is, they can – inmates can always suddenly turn violent when there's no other reason to think that they might. And there's no reason to think that Seagreen was about to start swinging around this razor that they forgot to collect when he's handcuffed and doing everything that they told him to do. Again, counsel for the state says there's no conflict over their state of mind. But that's exactly what the conflict is all about. That is, whether a reasonable officer in this position could have thought that there was a threat that Mr. Seagreen posed, both from his possession of the razor, from his alleged refusal to drop it, which there's factual disputes about, whether he did drop it before the O.C. was used, what Duffy knew when he sprayed him. These are all disputes about what the officers knew and could reasonably perceive. And because there are disputes about all these facts, this is a case that needs to go to a jury to resolve. And they're free to make all the same arguments that they've made to you, and a jury may believe them. But we need a jury to decide what actually happened here. Thank you. Thank you. Thank you, counsel. That concludes our witness case.